Filed 12/1/23  Baclet v. Baclet CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY L. BACLET, | |
| Plaintiff and Appellant, | G061672 |
| v. | (Super. Ct. No. 30-2019-01083668) |
| ROSALIE BACLET, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Law Office of Kathleen Aberegg and Kathleen Aberegg for Plaintiff and Appellant.

Olson Law Firm and Shawn M. Olson for Defendant and Respondent.

Jeffrey L. Baclet filed a complaint against his aunt Rosalie Baclet, asserting causes of action for quiet title and fraud.[1] He contends the court erred in granting Rosalie's motion for summary adjudication of his two claims on the grounds they were barred by the statute of limitations and the claim preclusion doctrine. As we explain *post*, the undisputed facts demonstrate Jeffrey's claims accrued more than three years before he filed this lawsuit and his claims are therefore time barred by the three-year statute of limitations for fraud. (Code Civ. Proc., § 338, subd. (d).) Because we conclude summary adjudication was properly granted on this ground, we do not address whether Jeffrey's claims were also barred by application of the claim preclusion doctrine. Finding no error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### THE CALIFORNIA ACTION

In 1999, Jeffrey's father Steven Baclet and Rosalie filed an action in the Superior Court of Orange County against their brother Charles Baclet, seeking declaratory relief regarding their respective interests in six real properties in California (California Properties) and six real properties in Nevada (Nevada Properties), properties they alleged Charles had converted and encumbered. (We will refer to this prior litigation as the California Action.) During the California Action, Steven passed away. Steven left a Last Will and Testament bequeathing a 60 percent share of his estate to Jeffrey and a 40 percent share to Rosalie. Probate proceedings for Steven's estate were opened in both California (Orange County) and Nevada (Washoe County).

---

[1] Because multiple individuals referenced in this opinion share the Baclet surname, we refer to them by their first names. No disrespect is intended. We note Rosalie is occasionally referred to as "Rose" in the record; we will use Rosalie as stated in the complaint.

The California Action settled in October 2001 when the parties entered a "Stipulation for Settlement" (settlement agreement).  The settlement agreement defined "'plaintiffs'" as Steven's estate and Rosalie and "defendant" as Charles.  As relevant here, it stated Charles acknowledged the California Properties belonged to Rosalie in full, and the settlement agreement required Charles to issue quitclaim deeds for all of them in Rosalie's name.  Under the terms of the settlement agreement, the Nevada Properties belonged to Steven's estate and Rosalie and quitclaim deeds for the Nevada Properties were to be issued by Charles in the names and percentages as designated by Steven's estate and Rosalie.

The parties also agreed "to the appointment of a receiver/special master as an integral part of the settlement" and plaintiffs were to select the receiver/special master to be appointed.  Under the terms of the settlement agreement, Charles was to deliver to the receiver/special master quitclaim deeds on the California Properties and the Nevada Properties.  The receiver/special master was "authorized to transfer the properties to Rosalie Baclet and/or Jeffrey Baclet in the name of or in percentages as designated by [them.]"  The settlement agreement was signed by Rosalie and Jeffrey, each in his or her own individual capacity and as heirs to Steven's estate.  The settlement agreement required its terms be approved by the probate courts in Nevada and California as it concerned Steven's estate.

In December 2001, the Nevada probate court approved the settlement agreement.  The California probate court approved the settlement agreement in April 2002; in its order approving the agreement, the probate court stated no assets would be transferred to Steven's California estate under the settlement agreement's terms.  Grant deeds were recorded in Orange County, California in October and December 2003, evidencing the transfer of the California Properties from Charles to Rosalie.  After the Superior Court of Orange County approved the agreement, the California Action was dismissed.  The probate proceedings in both California and Nevada were later closed.

3

## II.

### THE 2011 NEVADA PROBATE ACTION

The Nevada probate case closed in October 2003.  Eight years later, in October 2011, Jeffrey filed a "Petition for Confirmation of Trustee for Accounting and to Remove Trustee and to Terminate Trust," reopening the probate case in Nevada (Nevada Probate Action).  In his petition, Jeffrey sought to remove Rosalie as trustee for three properties in Nevada distributed to her from Steven's estate in 2003 and to have the properties transferred to him.

Jeffrey also discussed the California Properties in his petition, stating: "Regarding the six California properties of Decedent, Jeffrey Baclet gave Rosalie Baclet all six (instead of three properties), in consideration for her executing a Last Will and Testament bequeathing those six properties to Jeffrey Baclet.  To this date the testamentary transfer has been confirmed."  In his petition, Jeffrey did not request the Nevada court take any action concerning the California Properties.  Rosalie, however, raised the issue of the California Properties in her cross-petition in the Nevada Probate Action, and the parties presented evidence and arguments concerning the California Properties in the ensuing litigation.

In an affidavit Jeffrey filed in the Nevada Probate Action in 2012, he stated: "At the settlement of the [California Action], [Rosalie] asked me, if she could have the C[alifornia] properties.  Recalling [my] father's sentiment about taking care of his sister, I agreed at that moment verbally, on stipulation, she willed them to me, & agreed to help me, as I had helped her, if I requested.  Then I stated I had her Will – [Rosalie] agreed.  She had already made such a Will, that I possessed.  This was confirmed in writing, January 26, 2004, when I signed-off on the CA properties, transferred to her.[2]  It is ludicrous to assume this would imply, she could change her will or sell or inc[u]mber the

---

[2]  Jeffrey's letter is dated after the California Properties were transferred from Charles to Rosalie.

properties without consideration.  Although, it was also foolish, due to sentiment, not to lock this down more thoroughly, in writing." (Boldface and capitalization omitted.)  He also made the following statements in his affidavit:  "In spite of numerous verbal & written agreements, [Rosalie] declares it was & is all hers" (capitalization omitted); "She indicates, she does not intend to honor her agreements with me, written or verbal" (boldface, capitalization, and underscore omitted); and "Rosalie asserts:  [¶] . . . [¶] I have no interest in the CA properties & there was not to be a WILL."  In his affidavit, he requested:  "The CA properties be confirmed, in writing; as a life estate for [Rosalie], indelibly willed to [him] – that she cannot encumber them, without [his] signature – if sold, 50% must go to [him]." (Boldface, capitalization, and underscore omitted.)

A bench trial was held in the Nevada Probate Action.  In February 2013, the Nevada district court found the California Properties should remain in Rosalie's name in accordance with the settlement agreement and the court's prior approval of the settlement agreement.  (The parties dispute whether this finding is binding in the current proceeding but do not dispute the finding was made.)  The Nevada district court found Jeffrey was judicially estopped from challenging the 2003 order distributing certain pieces of real property in Nevada to Rosalie, and the decision was affirmed by the Nevada Court of Appeal in 2020.

### III.

### THE CURRENT ACTION

In June 2016, Rosalie sold one of the California Properties, the "Buttonwood Property," and Jeffrey learned of its sale in 2017.  In July 2019, Jeffrey initiated the current action by filing a complaint against Rosalie, asserting two causes of action:  (1) quiet title and (2) fraudulent false promise.  The quiet title action involved the five remaining California Properties.  The sixth property, the Buttonwood Property, was the subject of the fraud cause of action.

5

In his complaint, Jeffrey alleged that after the settlement agreement was reached in the California Action, he and Rosalie entered into a separate written agreement in November 2001, concerning the selection of a receiver/special master to be appointed to transfer all of the properties at issue in the California Action (November 2001 agreement).[3] Despite the settlement agreement dictating the California Properties belonged solely to Rosalie, the November 2001 agreement provided the California Properties would be equally divided between Rosalie and Jeffrey. Jeffrey alleged that about a week after they signed the November 2001 agreement, Rosalie requested he agree to all the California Properties being deeded to her, a return to the terms of the settlement agreement. He alleged she induced him to agree to this by promising she would bequeath the California Properties to him and if she sold any of them before she died, she would give him 50 percent of the sale proceeds. As a basis for both causes of action, Jeffrey alleged Rosalie never intended to perform this promise when she made it. He alleged he reasonably relied on her false promise and "assented to the transfer of all six California [P]roperties from Charles . . . to [Rosalie], in contradiction to the November [2001] agreement." Jeffrey further alleged Rosalie did not perform her promised act because she sold the Buttonwood Property and did not split the sale proceeds with him. He alleged he was harmed because he lost his remainderman interest in the Buttonwood Property and/or 50 percent of the sale proceeds.

In his quiet title cause of action, Jeffrey sought title to three of the California Properties and a declaration Rosalie no longer had "any right, title, or interest in" them. In his fraud cause of action, he sought one-half of the proceeds from the sale of the Buttonwood Property.

After Jeffrey filed his complaint, Rosalie filed an answer and a cross-complaint. In her answer, she asserted Jeffrey's complaint was barred by the statute of

---

[3] The individual identified in this agreement to be appointed receiver/special master was ultimately not appointed to the position.

6

limitations, issue preclusion, and claim preclusion. In her cross-complaint, she asserted causes of action against Jeffrey for slander of title, quiet title, and declaratory relief.

In April 2021, Rosalie moved for summary adjudication of the two claims in Jeffrey's complaint on the grounds, as relevant here, they were barred by the claim preclusion doctrine and time barred under the statute of limitations.[4] The court granted the motion on both grounds.

The court concluded Jeffrey's claims were barred by the three-year statute of limitations for fraud. The court found Jeffrey knew or was aware of facts giving rise to the alleged fraud by May 2012, based on Jeffrey's statements in his affidavit in the Nevada Probate Action, in which he stated Rosalie denied he had an interest in the California Properties and denied having a will. The court found Rosalie had "met her initial burden of showing [the] lawsuit was filed years beyond the expiration of" the three-year statute of limitation in Code of Civil Procedure section 338, subdivision (d). The court further found "even if [Jeffrey's] declaration did not show his knowledge of the harm he was suffering, his participation in the Nevada probate lawsuit did. . . . [T]he Nevada probate lawsuit, concluded in 2013, fully litigated the disposition of the California properties. Once again, application of the three-year statute of limitations would limit [Jeffrey's] claim to no later than 2016 -- still more than three years before this 2019 lawsuit." The court concluded Jeffrey knew he had "suffered harm and the statute of limitations began to run no later than 2012 or 2013 and had long expired before the 2019 filing of this action."

Addressing claim preclusion, the court found Jeffrey's claims were barred because the same primary right was involved in both the Nevada Probate Action and the instant action; the parties presented evidence and argument concerning the California Properties in the Nevada Probate Action; and in the Nevada Probate Action, the court had

---

[4] It appears Rosalie initially filed for summary judgment in 2020, but the motion was denied on procedural grounds without prejudice.

issued orders stating the California Properties should remain in Rosalie's name according to the settlement agreement from the California Action.

After the court's ruling, Rosalie dismissed her cross-complaint against Jeffrey without prejudice. Judgment was entered in June 2022, and Jeffrey timely appealed.


DISCUSSION

Jeffrey contends the court erred by granting Rosalie's motion for summary adjudication of the claims in his complaint. We conclude undisputed evidence shows Jeffrey's causes of action are barred by the statute of limitations. Jeffrey's causes of action arise from a purported agreement with Rosalie in 2001, in which he relinquished his claimed interest in the California Properties in reliance on her promise to bequeath them to him and share the proceeds of any sales. Jeffrey's affidavit in the Nevada Probate Action shows that by 2012, he believed she had made a false promise because she had since told him he had no interest in the California Properties, there was no will, and she did not intend to honor her agreements with him. Because Jeffrey did not file his complaint until 2019, the court correctly concluded Jeffrey's claims are barred by the statute of limitations.


I.

GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

"'A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"" [Citations.] 'A defendant moving for summary adjudication of a cause of action must show that one or more elements cannot be established or that there is a complete

8

defense.'" (*Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 123–124.)

Where a defendant seeks summary adjudication or summary judgment based on the defense the action is barred by the statute of limitations, "'[t]he defendant has the initial burden . . . to show that undisputed facts establish [this] affirmative defense. [Citation.] Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact regarding the defense. . . . Although application of the statute of limitations is normally a question of fact, the question becomes one of law when the evidence is susceptible of only one reasonable conclusion.'" (*Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 64.)

We review a ruling granting a motion for summary adjudication de novo. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273.) "'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'" (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39 [reviewing grant of motion for summary judgment]; accord, *Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 351 [applying same standard when reviewing grant of motion for summary adjudication].)

II.

STATUTE OF LIMITATIONS

"An action for relief on the grounds of fraud or mistake must be commenced within three years. However, such action is not deemed accrued 'until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.' (Code Civ. Proc., § 338, subd. (d).) The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff *suspected or should have suspected that an injury* was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a

9

reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery. Wrong and wrongdoing in this context are understood in their lay and not legal senses." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373–1374 (italics added); accord, *Vera v. REL-BC, LLC, supra*, 66 Cal.App.5th at p. 69.)

"The limitations period for a quiet title cause of action depends on the underlying theory of relief." (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1122.) Because Jeffrey's causes of action for fraud and quiet title are both based on Rosalie's alleged fraud, the three-year limitations period in Code of Civil Procedure section 338, subdivision (d) applies to both.

The dispute in this case is whether there is a triable issue of material fact as to when Jeffrey's causes of action for fraud and quiet title accrued. If his claims accrued prior to July 2016, they are barred by the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d).

Jeffrey contends his claims did not accrue until 2017 when he learned Rosalie sold the Buttonwood Property. He asserts his complaint filed in 2019 was therefore within the three-year statute of limitations period. Rosalie argues Jeffrey's claims are barred by the statute of limitations because there is undisputed evidence Jeffrey knew facts that would lead a reasonably prudent person to suspect fraud by at least 2012. Rosalie supports her argument by citing to Jeffrey's affidavit filed in connection with a summary judgment motion in the Nevada Probate Action in 2012, in which Jeffrey declared Rosalie told him he had no interest in the California Properties and "there was not to be a WILL." Jeffrey does not dispute he made this statement but disputes the statement's relevance, asserting fraud and title to the California Properties were not litigated on the summary judgment motion in Nevada. Jeffrey misses the mark. His statement is relevant to the issue of the accrual date for the statute of limitations issue.

10

Jeffrey's statements in his affidavit in the Nevada Probate Action in 2012 show Jeffrey was aware at that time of the facts constituting his fraud claim in the current action. "'To establish a claim for fraudulent misrepresentation, the plaintiff must prove: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff."'" (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 605–606.) At the time of his affidavit in 2012, Jeffrey had knowledge of the alleged facts essential to his fraud claim: (1) Rosalie had promised in 2001 to bequeath the California Properties to him and give him half of the proceeds if she sold them; (2) The promise was false; (3) Rosalie made the promise knowing she had no intention of keeping it; (4) She intended Jeffrey rely on her promise so he would agree to her receiving all of the California Properties from Charles; (5) Jeffrey reasonably relied on her promise; (6) He was harmed; and (7) His reliance on her promise was a substantial factor in causing his harm.

Jeffrey argues otherwise. He contends that while his 2012 affidavit shows he suspected Rosalie would not honor her agreements with him, he could not bring an action for fraud until she sold one of the California Properties and failed to share the proceeds with him. He asserts it was only once Rosalie sold the Buttonwood Property without sharing the sale's proceeds that he suffered damages and he was able to bring the current action, which he did within the three-year statute of limitation's period. According to Jeffrey, even if he believed in 2012 that Rosalie "had falsely promised him the properties, he could not maintain an action without damages. . . . As long as [Rosalie] kept ownership of the properties, [he] did not have a fraud claim against [her.]" We

11

disagree. Damages are a remedy for a harm or injury. Jeffrey's 2012 affidavit reflects knowledge of a harm he suffered from Rosalie's false promise.

According to Jeffrey's allegations, he was harmed in 2001 when Rosalie convinced him at that time to give up his ownership interest in the California Properties based on her false promise. By 2012, he realized he had been harmed because she told him he had no interest in the California Properties, there was no will bequeathing the properties to him, and she did not intend to honor their prior agreements. Jeffrey knew or suspected all the facts essential to his fraud claim in 2012. However, he did not take any action in California concerning the California Properties until 2019, seven years later and well beyond the running of the statute of limitations.

Jeffrey relies on *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479 (*Romano*) to support his argument knowledge of a potential harm does not trigger the accrual of the statute of limitations period. In *Romano*, the issue before the Supreme Court was "when the statute of limitations begins to run in a wrongful termination case in which the plaintiff has alleged causes of action sounding in contract and tort, as well as violations of the California Fair Employment and Housing Act." (*Id.* at pp. 483–484.) The Supreme Court concluded the statute of limitations on all the plaintiff's alleged causes of action ran from the date his employment was terminated, not from the date he was informed his employment would be terminated in the future. (*Id.* at pp. 491, 503.) Addressing the statute of limitations question as to the plaintiff's tort cause of action, the Supreme Court stated: "The statute of limitations does not begin to run in a tort action until 'plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy . . . .'" (*Id.* at pp. 500–501.)

Relying on *Romano*, Jeffrey asserts his subjective beliefs that Rosalie did "'not intend to honor her agreements with [him],' [did] not create an actionable tort." Jeffrey's reliance on *Romano* is misplaced. The statute of limitations in Code of Civil

12

Procedure section 338, subdivision (d), has long been interpreted "to commence upon the discovery by the aggrieved party of the fraud *or* facts that would lead a reasonably prudent person to *suspect* fraud." (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 950; accord, *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 ["Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her"].) The facts at Jeffrey's disposal in 2012 were sufficient as a matter of law to begin the running of the statute of limitations. According to his affidavit in 2012, he suspected or knew he had been harmed because he had relinquished his interests in the California Properties in exchange for Rosalie's promise, which he realized by 2012 was false.

Jeffrey's argument he had no legal recourse until Rosalie sold one of the California Properties is undermined by his own complaint. Jeffrey asserts he was unable to initiate an action until Rosalie sold one of the California Properties, resulting in damages. But Jeffrey's first cause of action in his complaint is for quiet title as to three of the remaining California Properties, without seeking damages. Jeffrey fails to explain why he was unable to bring an action seeking quiet title or declaratory relief to protect his interests in the California Properties before Rosalie sold one. "A quiet title action is a statutory action that seeks to declare the rights of the parties in realty. [Citations.] ""The object of the action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.'" [Citation.] The purpose of a quiet title action is to determine any adverse claim to the property that the defendant may assert, and to declare and define any interest held by the defendant, '"so that the plaintiff may have a decree finally adjudicating the extent of his own interest in the property in controversy.'"" (*Robin v. Crowell* (2020) 55 Cal.App.5th 727, 740.)

13

The undisputed evidence shows a long unexcused delay after Jeffrey knew of the essential facts for his causes of action. "Civil statutes of limitations protect defendants from the necessity of defending stale claims and require plaintiffs to pursue their claims diligently. [Citations.] They are '"designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."'" (*Romano, supra*, 14 Cal.4th at p. 488.) Because Jeffrey failed to sue Rosalie within three years of his discovery of the facts constituting the alleged fraud (by at least 2016), his claims are barred by the statute of limitations. The grant of Rosalie's motion for summary adjudication was proper.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

MOTOIKE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

SANCHEZ, J.

14